Michael Chase Montgomery
**FULL NAME**
Michael Montgomery
**COMMITTED NAME (if different)**
FCI Sheridan, P.O. Box 5000
**FULL ADDRESS INCLUDING NAME OF INSTITUTION**
Sheridan, Oregon 97378

21005-081
**PRISON NUMBER (if applicable)**

FILED 11 APR '19 11 21 USDC-ORP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

Michael Montgomery,
Pro se Plantiff,

        v.

Brigitte Wolverton, PA-C/Provider
USP Victorville; Liza Hoen, PA-C
USP Victorville; Franklin Rutledge
MD. USP Victorville; Ms. Lean
Medical Director, USP Victorville;
Dawn Montoya, PA-C FCI Phoenix;
B. Medrano, DMD, Phoenix; Holly
Schultz, RN, Phoenix; Kristin
Langdon, RN, Phoenix; M. Ramirez,
EMT/P Phoenix; Mr. Barnes,
Counselor (Pima-A), Phoenix,
Unknown Unit Manager (Pima-A),
Phoenix; Salvatore Ricotta, MD,CD,
Phoenix; Karl Bergman, Provider,
Sheridan; Anthony Anderson EMT-P,
Sheridan; Andrew Grassley MD/CD ,
Mr. Cray (2B Counselor), Sheridan;
Ms. Lean, Medical Director of
facility Sheridan; Marcie Morgan,
HIT, Sheridan; Mary M. Mitchell,
Director of Western Region; Ian
Conners, Administrator National
Inmate Appeals,
Defendants.

CASE NUMBER  3:19-CV-00546-AC
*To be supplied by the Clerk*

### CIVIL RIGHTS COMPLAINT
### PURSUANT TO *(Check one)*

☐ 42 U.S.C. § 1983
☒ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☒ No

2. If your answer to "1." is yes, how many? _____

    Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
   Plaintiff _____

   Defendants _____

b. Court _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it

   appealed? Is it still pending?) _____

f. Issues raised: _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
   occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

3. Is the grievance procedure completed? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff __Michael Montgomery__
                                                          (print plaintiff's name)

who presently resides at _Federal Correctional Institution Sheridan, P.O. Box 5000_
                          (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_USP Victorville, California; FCI Phoenix, Arizona; and continuing at FCI Sheridan._
                          (institution/city where violation occurred)

|                    | USP Victorville        | FCI Phoenix          | FCI Sheridan      |
|--------------------|------------------------|----------------------|-------------------|
| on (date or dates) | 8-29-16/12-25-17       | 12-27-17/9-10-18     | 9-22-18/ on going |
|                    | (Claim I)              | (Claim II)           | (Claim III)       |

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant __Brigitte Wolverton_____ resides or works at
   (full name of first defendant)

   __USP Victorville_____
   (full address of first defendant)

   __PA-C Provider_____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:
By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention.

2. Defendant __Liza Hoen_____ resides or works at
   (full name of first defendant)

   __USP Victorville_____
   (full address of first defendant)

   __PA-C Provider_____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:
By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

3. Defendant __Franklin Rutledge_____ resides or works at
   (full name of first defendant)

   __USP Victorville_____
   (full address of first defendant)

   __MD._____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:
By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

4. Defendant    Ms. Lean _____ resides or works at
           (full name of first defendant)

       Is/was at USP Victorville currently at FCI Sheridan
       (full address of first defendant)

       Medical Director
       (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
   the BOP policy to deny adequate medical attention

5. Defendant    Dawn Montoya _____ resides or works at
           (full name of first defendant)

       PA-C Provider
       (full address of first defendant)

       Is/was at FCI Phoenix
       (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention.

6. Defendant    B. Medrano _____ resides or works at
           (full name of first defendant)

       DMD.
       (full address of first defendant)

       Is/was at FCI Phoenix
       (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

CV-66 (7/97)

7. Defendant  Holly Schultz _____ resides or works at
              (full name of first defendant)
              RN _____
              (full address of first defendant)
              Is/was at FCI Phoenix _____
              (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

8. Defendant  Kristin Langdon _____ resides or works at
              (full name of first defendant)
              RN _____
              (full address of first defendant)
              Is/was at FCI Phoenix _____
              (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

9. Defendant  M. Ramirez _____ resides or works at
              (full name of first defendant)
              EMT/P _____
              (full address of first defendant)
              Is/was at FCI Phoenix _____
              (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

Page 5

10. Defendant    Mr. Barnes                 resides or works at
<br>(full name of first defendant)

         Counselor (Pima-A Unit)
<br>(full address of first defendant)

         Is/was at FCI Phoenix
<br>(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

11. Defendant    Name Unknown              resides or works at
<br>(full name of first defendant)

         Unit Manager (Pima-A Unit)
<br>(full address of first defendant)

         Is/was at FCI Phoenix
<br>(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention.

12. Defendant    Salvatore Ricotta            resides or works at
<br>(full name of first defendant)

         MD, CD.
<br>(full address of first defendant)

         Is/was at FCI Phoenix
<br>(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

CV-66 (7/97)

13.  Defendant   Karl Bergman _____ resides or works at
                 (full name of first defendant)
                 Mid Level Provider
                 (full address of first defendant)
                 Is/was at FCI Sheridan
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

14.  Defendant   Anthony Anderson _____ resides or works at
                 (full name of first defendant)
                 EMT-P
                 (full address of first defendant)
                 Is/was at FCI Sheridan
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

15.  Defendant   Andrew Grassley _____ resides or works at
                 (full name of first defendant)
                 MD/CD
                 (full address of first defendant)
                 Is/was at FCI Sheridan
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention

16. Defendant    <u>Mr. Cray</u>                           resides or works at
<br>            (full name of first defendant)

            <u>Counselor (Unit 2B)</u>
            (full address of first defendant)

            <u>Is/was at FCI Sheridan</u>
            (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

<u>By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOp policy to deny adequate medical attention</u>

17. Defendant    <u>Marcie Morgan</u>                    resides or works at
<br>            (full name of first defendant)

            <u>HIT</u>
            (full address of first defendant)

            <u>Is/was at FCI Sheridan</u>
            (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

<u>By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adeqaute medical attention</u>

18. Defendant <u>Mary M. Mitchell</u>                    resides or works at
<br>            (full name of first defendant)

            <u>Director of the Western Region</u>
            (full address of first defendant)

            <u>Is/was at the Regional Office</u>
            (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

<u>By disregarding the Plaintiffs serious need for medical treatment when in a normal medical setting and not having the authority to refuse such treatment. Relying on the BOP policy to deny adequate medical attention</u>

CV-66 (7/97)

19. Defendant  Ian Conners _____ resides or works at
               (full name of first defendant)

        Administrator National Inmate Appeals _____
        (full address of first defendant)

        Is/was at the Central Office in D.C. _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

20. Defendant  William W. Lothrop _____ resides or works at
               (full name of first defendant)

        Is was at FCI Phoenix in Arizona _____
        (full address of first defendant)

        Warden of the Federal Correctional Institution ___
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

21. Defendant  Wayne Weissinger _____ resides or works at
               (full name of first defendant)

        Is was at FCI Phoenix in Arizona _____
        (full address of first defendant)

        N.P. at the Federal Correctional Institution _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

By disregarding the Plaintiffs serious need for medical treatment when in a normal
medical setting and not having the authority to refuse such treatment. Relying on
the BOP policy to deny adequate medical attention

CV-66 (7/97)

## D. CLAIMS*

**CLAIM I**

The following civil right has been violated:

Plantiff :: believes that his Fifth Amendment right to Due Process and his Eigth Amendment right to be free of any Cruel and Unusual Punishment has been violated. Plantiff further believes that his right to adequate medical attention as well as treatment and care have been severely prejudiced. Plaintiff claims that the deliberate indifference to his severe medical condition and treatment has continued over the course of multiple years now. Starting on or about August 29, 2016 while at United States Penitentiary Victorville and continuing as he has been transfered from USP Victorville to Federal Correctional Institution Phoenix and then currently at Federal Correctional Institution Sheridan. I have been denied proper medical care, been treated with disregard, disrespect, and even told that there is nothing wrong with the Plaintiff at each and every institution that he has been too. Each Defendant named in the Petitioners Bivens claim has had at some point an interaction with the Petitioner and has denied him treatment even after being made aware of such painful conditions. For these reasons the Plaintiff claims his Eighth and Fifth Amendment rights have been violated and he can prove that prison officials were deliberately indifferent to a serious medical need as well as deficient medical care.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

On or about August 29, 2016, in United States Penitentiary, Victorville, inside the Housing Unit 3A, cell 104 where the Plaintiff was assigned. Plaintiff was using the ladder on his bunk to climb up to his top bunk when his foot slipped off. His lower rib caught on the top bunk (ladder was powder coated smooth without grip tape or anything to help in securing his footing and keep him from slipping) causing "costochondral rib seperation at (approx) T10 on the left anterior chest." This injury placed the Plaintiff in excrutiating pain and causing difficulties in the Plaintiff's breathing. Plaintiff asked the unit officer if he could go up to medical, upon explaining the situation. Upon arriving at medical the Plaintiff was seen by Paramedic Brian Villanueva. After Plaintiff explained what had happened, the medic took the Plaintiff's vitals and examined his rib cage and the site where the pain was coming from. In Mr. Villanueva's Clinical Encounter he states in pertanent part, "Yes: Deformity," ribs were folding over each other causing deformity. "Minor deformity/ crepitus noted to approx. 8th ICS on inspiration and expiration." In Mr. Villanueva's

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

CONTINUATION OF FACTS FROM PAGE 10...

"assesment" states as follows:

> "L side flank pain. Duty medical officer contacted and ordered
> the patient to receive Ibuprofen until patient can be x-rayed
> and evaluated by provider at sick call. Patient released
> back to housing unit and advised to follow up with provider
> at sick call or to immediately notify staff if condition
> changes or worsens."

Plaintiff during the exam notified Mr. Villanueva that he felt something
break inside, was in excruciating pain, and was having difficulties with
breathing. Plaintiff was in such extreme pain that he had to be helped
by another inmate to medical and insisted to be seen by a doctor. Paramedic
Mr. Villanueva refused to acknowledge the severity of the injury. At this
point the Plaintiff has shown that Defendant is deliberately indifferent
to Plaintiff's serious medical needs. The Defendant knew of a broken rib
cage and was negligent in diagnosing and treating the Plaintiff's medical
condition. Defendant is a paramedic and trained to recognize a serious
condition. At this point the Plaintiff should have been seen by a doctor
or transferred to a hospital. Instead a duty officer was contacted and
Plaintiff was sent back to a regular unit. The Defendant had at this very
moment, knowledge that Plaintiff was suffering from pain of his affliction,
and that he had a serious medical need. A serious need that was not reasonably
be ing responded to. The Plaintiff's condition could result in further
significant injury and or the unnecessary wanton infliction of pain.

The Plaintiff returned the following day (08-30-16) to medical. The
Plaintiff was seen by PA-C Liza Hoen who again took vitals. Plaintiff explained
what had happened and was examined. Plaintiff again expressed that he was
experiencing excrusiating pain and had not slept that night due to this
pain. He also expressed his difficulty in breathing. The Plaintiff stated
there was something sticking out of his chest.

CONTINUATION OF FACTS FROM PAGE 10...

Defendant Mrs. Hoen states in her Exam Comments the following:

"No distress, Left anterior chest wall exquisitely tender to palpation, with palpable 4x4x0.5cm mass/defect at costochondral junction of (approx.) T10, no Crepitus."

In her assesment she states:

"Fracture one rib, S2239XS-Current-costochondral rib separation at (approx.) T10 on the Left, anterior chest."

All of the notes made in this clinical encounter described both in sight and physically feeling by her hand the Plaintiff's broken rib. it is obvious to both the Defendant and Plaintiff that something is in fact broken. The Defendant chose to ignore the obvious, disregarded her medical training and sent Plaintiff on his way back to the Unit. The Plaintiff was in obvious and extreme pain. It is very clear by Defendant Hoen's notes, comments, and assesment that she was aware of abnormalty in the Plaintiff's "left, anterior chest." Defendant should have asked a doctor to evaluate the Plaintiff. Defendant Hoen's final disposition on this day was to follow up at sick call as needed, and return to sick call if not improved. Plaintiff was given an abdominal binder for support, as well as Ibuprofen 600mg for pain (BID). Plantiff was advised that the x-ray results were negative of any fractures and directed to leave.

The Plaintiff had refused to leave medical and asked to see a doctor adamently expressing that there was something really wrong and something was sticking out of his Left anterior chest, and that the rib cage appeared to be folding over itself. He has explained that the pain was near intolerable and he could not breath. Defendant Hoen stated that the Plaintiff did not have a right to see a doctor and that nothing was wrong with him. Defendant Hoen directed the Plaintiff to leave again or she would call for a Lt. and have him taken to the Special Housing Unit (SHU).

Page 12

CONTINUATION OF FACTS FROM PAGE 10...

Knowing that being placed in SHU he would not receive medication or medical attention, he left and returned to the housing Unit. This clinical encounter reflects a pain scale of 8. Consistent with what the Plaintiff had been complaining about. Furthermore, the incounter makes clear that this Defendant was aware of the potential of a serious medical need that was disregarded by Defendant Liza Hoen. The Defendant did knowingly document that the Plaintiff was experiencing "really bad chest pain and I can hardly breathe, it hurts so bad." The Defendant refused the Plaintiff to see a doctor and when Plaintiff refused to leave until he was seen by the doctor, the Defendant then threatened the Plaintiff with segregation (SHU). If the Defendant (Hoen) had properly and professionally examined the Plaintiff she should have been able, just as anyone else to plainly see and feel the deformity. Defendant Hoen was acting Deliberately Indifferent to the Plaintiff for making him suffer through "unnecessary and wanton infliction of pain."

On or about September 12, 2016, the Plaintiff had returned to medical because the binder he had been issued was causing further and unnecessary pain. It appeared to have collapsed his left side of the rib cage. In and through research done by the Plaintiff, he learned that the last thing you want to do in a situation such as he was suffering, is to wear a binder. By following the medical advise of Defendant Hoen, Plaintiff is permanently disfigured and is constantly in pain.

Plaintiff was seen this date by PA-C Brigitte Wolverton. During the encounter the Plaintiff explained to her the amount of pain he has been in since the incident happened as well as the new disfigurement. Plaintiff asked this Defendant to see the doctor to properly address the issue. Defendant seemed to be intoxicated and kept falling asleep during this encounter. Plaintiff

Page 13

CONTINUATION OF FACTS FROM PAGE 10...

became agitated by the Defendants actions and he demanded to see the doctor
because the Defendant could not stay awake to perform her duties and
responsibilities to the Plaintiff. Defendant refused to look at the injury
or acknowledge the issue at hand and would not address the the medical
condition that has been significantly affecting the Plaintiff's daily
activities; or the existance of cronic and substantial pain that the
Plaintiff has been experiencing. The Plaintiff made the Defendant aware
that the Ibuprofen that was prescribed was not relieving any pain let alone
reducing the swelling of the Plaintiff's rib cage and the area of the injury.
Defendant Wolverton documented her subjective observation as, "his pain is
7/10. However, he does not appear to be in that much pain." Upon Defendant
Wolverton's apparent actions of nodding off, the Plaintiff again asked to
see the doctor and was then told by Defendant that the visit was over and
that he needed to leave.

The Plaintiff began his grievance process as required by the Prison
Litigation Reform Act (PLRA). In his complaint he expressed the lack of
medical attention that he was experiencing for his injury. Plaintiff felt
that he was experiencing or being subjected to "Cruel and Unusual Punishment,"
at the hands of the people who are required, expected, and have duty to
care for him. He explained in full detail his complaints regarding his
interactions and dealings with the medical department and staff, just short
of begging for help. Plaintiff has been going above and beyond his own
responsibilities to aquire proper and adequate medical attention. While
exhausting his remedies, Plaintiff continued to seek medical attention,
but was refused at the check in window and not allowed to even see the sick
call provider, by both Defendants, Hoen and Wolverton.

CONTINUATION OF FACTS FROM PAGE 10...

    Plaintiff explained the issue to both Defenants, Hoen and Wolverton that his pain and deformity were worsening, yet they both were aggressive and rudely told Plaintiff to leave or they would have the Plaintiff escorted to the SHU. Again not wanting to be taken to the SHU, Plaintiff left medical. Approximately one month later a female staff member from the administration brough the Plaintiff his grievence in the Unit and informed him that his allegations of poor medical attention was not a grievable issue and that he should leave it alone. I presumed the woman to be the Wardens Administrative Remedy Coordinator. She did not return the complaint to him either. She took it with her when she left. Not knowing what else to do and out of fear of retaliation from administrative staff, he left it alone.

    Over the course of approximately the next 8-10 months, Plaintiff began to experience health problems due to constant pain, sleep deprivation, and thoughts that he'd never be able to enjoy or partake in the same daily activities or livelyhood as he once did. One day in the SHU, the nurse who was passing out meds had informed the Plaintiff that if any Request to Staff (commonly refered to as kites), was filed out to a particular staff member, for example, the Doctor then niether Defendant Hoen or Wolverton could interfere with or respond to them.

    On or about July 24, 2017, Defendant Wolverton had the Plaintiff escorted from the SHU to an exam room to conduct an exam per the "kite" that Plaintiff had submitted with the doctor's name on it with the understanding that only the doctor would be responding to. Again, Defendant Wolverton was having a hard time remaining alert and atentive to Plaintiff's medical needs. The Defendant, Wolverton began with asking:

        Wolverton: I'm here because you requested to see the doctor.

CONTINUATION OF FACTS FROM PAGE 10...

Plaintiff: "That "kite" was for and addressed to the doctor.
I'm not trying to see you. You have ignored my
pain, suffering, and agony through the last several
months as if nothing was wrong, medically, with me.
Not to be rude or insulting, but you're not a doctor,
nor are you qualified to do the doctor's job."

Defendant: If you don't want to see me then you can be returned
to your cell in SHU. I'm here to see you and I'm the
one you're going to see.

Plaintiff: I'm requesting to see the doctor, not you. If you
are going to continue denying me to see the doctor
then I'd like for you to call the LT.

Defendant: I told you that you were not going to see anyone else.
Since I will not work for you, you will be returned
to your cell.

The Defendant became agitated and radioed for staff to return Plaintiff to

the SHU. Nothing futher was ordered or performed.

    Some time on or about Mid November of 2017, returning from the food service

after lunch the Plaintiff spotted the Medical Director Ms. Leen. Plaintiff

asked and nearly begged her for something to be done so that he could get seen

by the doctor of the institution. Defendant Leen became hostile, talking down

to the Plaintiff. She stated, "I've already read your file and that there was

nothing wrong with you." Plaintiff asked Defendant if he could lift his shirt

to show her the deformity on the left side of his chest. Defendant agreed to

allow Plaintiff to do so. Defendant showed genuine surprise when she saw how

badly the deformity was. At that very moment she directed the Plaintiff to

follow her to medical. Plaintiff did, sat by while Defendnant Leen made orders

on the computer for a CT scan. Defendant assured Plaintiff that she would take

care of it as soon as possible.

    The final report and recomendation for CT Scan. Exam: Film ribs; History:

lump in left flank; Technique: 3 views obtained; Comparison: No prior image

available. Findings: Lungs and pleural spaces are clear. There is a soft tissue

swelling overlaying the anterior left 8th and 9th ribs. There is no definate

CONTINUATION OF FACTS FROM PAGE 10...

radiographic evidence for acute fracture. There is Costochondral junction
irregularity. Impression: Costochondral junction irregularity and overlapping
soft tissue swelling at the anterior left 8th and 9th ribs. Correlate with
physical exam, injury, history and clinical presentation. If there is clinical
concern, CT examination can provide further characterization.

Plaintiff was transfered from USP Victorville on or about December 27, 2017.
He was transfered to Federal Correctional Institution, Phoenix. Plaintiff
arrived at the FCI Phoenix Institution on or about December 27, 2018.

Upon arrival at FCI Phoenix, Plaintiff was interviewed by Dawn Montoya.
He explained the issues he'd been dealing with and so she told him to go sick
call in the morning. On the Inmate Intra-System Transfer Form, listed is the
current health problems of the Plaintiff:

> "Costochondral rib separation at (approx.) T10 on the left,
> anterior chest; Fracture one rib."

The Staff member who completed the form was LaDrew Price EMT on or about December
21, 2017.

On January 5, 2018, an assesment was done by Medrano, B. DMD. It also
indicates  that "Encounter for general adult without abnormal findings." It
also shows for whatever reason that "pain, unspecified, left rib pain, no
fracture (resolved).

On January 6, 2018, Plaintiff was seen by Defendant Holly Schultz, RN.
During this Clinical Encounter, Plaintiff explained his injury to Defendant
while expressing the amount of pain he was experiencing and that he believed
that the injury had healed incorrectly. Plaintiff pleaded with Defendant for
her to help him. He explained that he's been seeking proper care through the
proper channels and (just not getting anywhere.) Defendant seemed concerned and
assured the Plaintiff that she would get him in to see the doctor. Plaintiff

CONTINUATION OF FACTS FROM PAGE 10...

expressed that his pain was on a scale of 8/10 with exasperating factors
bending, walking, or simply breathing. Plaintiff's injury was restricting
his movements and breathing. He again expressed concern that the medication
that was prescribed (Ibuprofen) was not working and began question it's
application for the Plaintiff's injury. Defendant Schultz's examination
report describes Chest Wall as: Joint deformity, malalignment, tenderness.
In her exam comments she states: "The inmate has a definitive deformity of
anterior left ribs."

On or about January 15, 2018, Plaintiff sent an electronic Request to
Staff "kite" to Health Services wondering when he would be seen since medical
had failed to schedule a follow up appointment after he went to sick call.
The E-cop-out went unanswered.

Medical files indicate that since arriving at FCI Phoenix, Plaintiff
has sought medical attention for his injuries. Plaintiff believes that FCI
Phoenix's inattention to the Plaintiff's serious medical needs does in fact
constitute a violation of his Eighth Amendment by the deliberate indifference
to a serious medical need. Defendants were aware, had knowledge of, and failed
in providing adequate medical care to the Plantiff.

For the fourth time in less than 35 days, the Plantiff went to medical
to seek medical attention. Plaintiff was seen by Defendant Kristin Langdon, RN.
The Plaintiff still felt as if his sternum was fractured explained the injury
and the amount of pain he was in. He also explained that he was waiting for
either an MRI or CT scan to be preformed, but could not understand how or why
medical staff did not take such an injury as serious or urgent. He was
a visual abnormalty in his left chest. This abnormalty protrudes outside of
his chest. Plaintiff was asked enough questions to become alerted to the

CONTINUATION OF FACTS FROM PAGE 10...

seriousness of the situation and thus knows that medical staff are also aware
of the seriousness of the Plaintiff's medical needs.

On or about January 30, 2018, Plaintiff sent an electronic request to
staff regarding being charged $2.00 for going to sick call for the same issue that
he'd already been charged for. He was simply trying to follow up with medical
staff since they failed to follow up with him. He asked for the money to be
returned to his inmate trust account. No response.

On or about February 10, 2018, Plaintiff sent an electronic request to staff
regarding his sternum or rib cage as he'd not heard anything back from any of
the medical staff. He stated that the medication was making no difference, and
wanting to know why he was charged yet again for the same issue. Again no response.

On or about March 22, 2018, from the compound, Plaintiff went to sick-call for
the third time since being in Phoenix and and seen someone for the fifth Clinical
Encounter. Plaintiff was seen by Defendant M. Ramirez EMT/P, expressing the very
same issues that he's been explaining to the other providers whohave taken the
approach of doing nothing medically productive. The Defendant's report reads as:
Inmate appears angry. Inmate has previous injury to left rib that has been x-rayed
in the past and inmate has complained of pain. Rib sticks out and is a firm bump.
nothing further was done. This appeared to be nothing more than a counseling
session telling me the same thing as before. The medical staff are deliberately
indifferent to the Plaintiff's medical needs.

On or about March 26, 2018, from the compound, Plaintiff is removed
from his cell and taken to sick call for the fourth time and his
sixth Clinical Encounter. Seen by Defendant Ramirez, Plaintiff again
expressed the amount of pain he has been in and having to suffer
through. The pain is so bad that the Plaintiff can not sleep at

CONTINUATION OF FACTS FROM PAGE 10...

night causing the Plaintiff to become irritable and easily agitated.
The Defendants medical assesment: Plaintiff has had the same
complaint of pain for weeks now. He is complaining that he wants
further evaluations on his left rib. "see previous notes for complaint
of pain." He also wants Ibuprofen. I will refer him to commissary for
that. Plaintiff was returned to his unit without any further treatment
for his injury. Plaintiff sent via the institutional mail, a request
to staff seeking a complete copy of his medical records as of December
24, 2017. This cop-out was dated in April 22, 2018. Medical "received"
that request in September 6, 2018. Plaintiff received no response.
By May 3, 2018, Plaintiff submitted another cop-out to medical seeking
a copy of his medical records since his arrival at FCI Phoenix.
Medical's response was that they did 27 pages of medical records
on the same date of receiving my cop-out. Also on May 3, 2018, the
Plaintiff had sent a second cop-out to medical asking them to make
an appointment for an MRI. The response was: CT scan ordered not an
MRI. CT is pending scheduling. These cop-outs were never returned
to Plaintiff so that he could see the responses. However, he found
them amongst his medical records.

For the fifth time, Plaintiff left the unit to go up to medical to
go to sick-call for his sixth Clinical Encounter. This time the
Plaintiff was seen by Defendant Weissinger. Plaintiff once again
began explaining his issues and pain that he was suffer through. He
explained that he was unable to purchase Ibuprofen from commissary
because they are always sold out, and that it was making him sick.
The Defendant did prescribe 400mg tablets for x3 a day for 7days.

CONTINUATION OF FACTS FROM PAGE 10...

On or about May 24, 2018, Plaintiff began to exhaust his
administrative remedy process in accordance with the P.L.R.A..
Plaintiff sought out Counselor Barnes (Pima-A) for the BP-8
(informal resolution) form to begin the process of grieving his
issue. The BP-8 is a informal resolution that must be completed
before getting the Formal Administrative remedy form BP-9.
The Plaintiff stated in his BP-8 to the counselor what his complaint
was about. "I have been trying to get medical attention for my
sternum since August 2016. I am in severe pain and currently have
an unknown object sticking out of my chest. I have been very clear
in all my corrispondence, but have been neglected and in most
cases completely ignored. This is and always has been  a serious
matter in  getting proper medical attention." The response that
I received was, "Your CT scan is scheduled and confirmed. Please
wait for the assigned date." The Plaintiff has gone through
great efforts to receive adequate medical attention for his issue.
Plaintiff has over 1 1/2 inches of medical records, request's,
and reports where nothing was properly attended to. Unknown Unit
Manager and Counselor Barnes both signed the unresolved BP-8.
Both Defendants have access to Plaintiff's medical records, both
were aware of his issues, and still acted in a deliberate manner
by not assisting him further to access proper and adequate medical
attention. Furthermore, when Defendant Barnes was returning the
response of the BP-8 to Plaintiff he also gave him a BP-9 (formal
administrative remedy form) to proceed his complaint to the Warden
of the institution. He stated that, "this is above my pay grade."

CONTINUATION OF FACTS FROM PAGE 10...

Plaintiff received this response on or about June 2, 2018.

Plaintiff immediately filled out the BP-9 and turned it into the Defendant Barnes for processing on or about June 6, 2018. Defendant, William W. Lothrop failed in meeting the response due date by filing an extention for an additional 30 days. Plaintif did receive a response from Defendant Lothrop on July 16, 2018, on the response due date. In that response, the warden doesn't even address the six questions that I asked to be addressed. the response was lengthly, but incomplete to the issues at hand. Through the administrative remedy process the warden was made aware of the issues to the Plaintiff of his concerns of inadequate and improper medical treatment or care. In Defendant Lothrop's response he, "suggest's that the Plaintiff seek medical care if Plaintiff has other concerns." Plaintiff asserts that he has been effectively as possible seeking medical attention "if his condition had worsened or he had other concerns." The Plaintiff has been doing just that for the past 22 months. Plaintiff has felt very discouraged by the actions of past Defendant actions or lack thereof.

On or about June 15, 2018, Plaintiff was taken to an outside facility (Abrazo Arrowhead Campus) for a "CT Chest W/O Contrast." The report states:

> Indications: LOCALIZED SWELLING, MASS AND Lump, Trunk-R22.2
>
> Chest Wall: BASE OF THE NECK IS NORMAL. THE AT THERE IS SUBTLE BULGE/SEPARATION OR CHRONIC FRACTURE OF THE LEFT 10th RIB CLOSE TO CHONDRAL JUNCTION.

CONTINUATION OF FACTS FROM PAGE 10...

> NO MASS IS SEEN. NO SOFT TISSUE ABNORMALITY.
> VISIUALIZED INTRA-ABDOMINAL IS NORMAL.
>
> Impression: LEFT RIB 10 COASTER CHONDRAL
> JUNCTION SEPARATION OR OLD FRACTURE. OTHERWISE
> NORMAL CT CHEST WITHOUT CONTRAST.

When Plaintiff was returned to the Institution from the outside facility,
Defendant Weissinger reports CT of chest  reveals old fracture of the left
10th rib or possibly on floater, no other findings. The report and analysis
of the CT scan confirms the previous injury that Plaintiff complains of
causing him pain. The facts or in the report as evidence of an injury.

The Plaintiff has been housed in an extremely violent enviroment and
had to go through daily torment both mentally and physicaly knowing that
in the event that Plaintiff had to defend or protect himself from attack, he'd
probably be severely injured as a result of the pain he had already been
subjected to from the Federal Bureau of Prisons failure to properly diagnose
and treat his original injury and is still vulnerable. Having the injury
heal in a incorrect manner leaves the damaged area weak and susceptible to
further injury and potentially leaving Plaintiff in a deathly situation and
defensless from attack.

It has taken the Federal Bureau of Prisons over 22 months to the injury
that the Plaintiff has been so consistently complaining about. Had the
Plaintiff not been so insistant for some form of imaging other than an x-ray,
he may still have never had the actual evidence needed to prove the deliberate
indifference to a serious medical need at the hands of so many medical staff
at different institutions.

On June 27, 2018, Plaintiff was brought into medical for a Clinical
Encounter with Dr. Ricotta as a result of filing a BP-8 and BP-9. During this
encounter, Defendant Ricotta states:

CONTINUATION OF FACTS FROM PAGE 10...

> "The second BP-0 (actually should be BP-9), refers to an
> injury he sustained on 08/29/16 when he slipped attempting
> to climb into his bunk, injuring his left lower rib cage.
> Since then he states he has been experiencing chest pain
> that prevents him from sleeping on his left side. A recent
> CT of the chest was normal **except** for evidence of 10th
> rib costochondral junction separation or old fracture. On
> exam there is a palpable nodularity at that site. I informed
> him I would request a Thoracic Surgical consult to determine
> if any corrective procedure could be recomended.

As can be seen by Dr. Ricotta's report, he was aware of Plaintiffs injury, even

documented the visuality of the deformity, then told Plaintiff that he'd consult

a thoracic surgeon if there was anything that can be done to correct it.

He scheduled a consult with a thoracic surgeon, Defendant sent Plaintiff to

an orthopedic surgeon instead.

On July 28, 2018, Plaintiff sent a request to staff (medical) seeking that

medical prescribe something for pain as he'd been experiencing a pain level

of 10. He also sought a pillow to place under him to support his sternum and

chest. Medical responded on 08/02/18 that he would have to purchase analgesic

OTC from commissary.

On or about July 28, 2018, Plaintiff submitted a second request to staff

(medical), seeking to know if he had been aprroved or scheduled to see the

specialist for his sternum. Medical responded on 08/02/18, that he is being

scheduled.

On or about July 30, 2018, Plaintiff sent a request to staff (medical),

seeking to be placed on the next sick call schedule for some form of pain

management, that he was in a lot of pain and had no way to support his sternum.

Medical responded on 08/01/18, "you will have to purchase Motrin OTC." Medical

Has consistently refused to provide any type treatment for the Plaintiffs

steady pain that he has complained of. Trying to make the Plaintiff pay for

his own medication in which he could not actually order from commissary.

CONTINUATION OF FACTS FROM PAGE 10...

In the Clinical Encounter dated 08/01/18, Dr. Ricotta entered notes
pertaining to the request to staff  dated 07/28/18 seeking a pillow, pain
medication, and the scheduling of the Thoracic consult. The doctor's notes
contained the following:

> "Inmate requested a second pillow (Plaintiff never had one at
> this point) which was denied. The Ibuprofen can be purchased
> OTC since he is not enrolled in CCC (chronic care clinic) and
> the Thoracic consult is being scheduled. All responses relating
> to his cop-out.

Inmate was transfered from Phoenix on or about September 10, 2018,
arriving at Federal Correctional Institution, Sheridan in Oregon on or about
September 28, 2018. Looking at the Inmate Intra-system Transfer from FCI
Phoenix shows and confirms that Plaintiff has had a "fractured one rib,
costochondral rib separation at (approx.) T10 on left , anterior chest."
This documentation and the access that each Defendant has had to these records
also shows their willingness to ignore the serious need for medical treatment.

While in transfer, Plaintiff was temporarily held in Parump, Nevada.
While there he saw the doctor of the facility and explained that his injury has
been being ignored by the Federal Bureau of Prisons. That he has been
prescribed and taking Ibuprofen for over two years. The doctor said, "that
is way too long and could have quite possibly caused stomach lining problems
or even kidney issues. The doctor prescribed Diclofenac Potassium tablet/capsule
in 75mg. doses. He was given a thirty (30) day supply.

When Plaintiff did finally arrive at his designation, FCI Sheridan a
medical screening was preformed by Defendant Karl Bergman. Notes included in
his report are as follows:

> Current Painfull Condition Location: PAIN/INJURY IN LEFT SIDE
> OF RIB CAGE FROM PREVIOUS FALL IN AUGUST 2016.
> Body Deformities: NO.
> New Medication Orders: DICLOFENAC POTASSIUM TABLET/CAPSULE

CONTINUATION OF FACTS FROM PAGE 10...

          75mg orally-two times a day x 30 day(s).

Even though it appears that this medication was ordered for the Plaintiff,

he did not receive it. Plaintiff tried to explain injury and amount of pain

he was in, but Defendant Bergman said to, "just go to sick call.

     On or about October 1, 2018 Defendant, Dr. Andrew Grasley entered an

administrative note to a Clinical Encounter form. Dr. Grasley wrote in his

note that was forwarded to the Pharmacy:

          Administrative note: DISCONTINUING NONFORMULARY NSAID.
          Discontinued Medication Orders: DICLOFENAC POTASSIUM TABLET/
          CAPSULE 75mg.
          Discontinue type: WHEN PHARMACY PROCESSES
          Discontinue Reason: DISCONTINUE

Dr Grasley discontinued Plaintiff's medication for no reason. At least no reason

was stated in his report. Plaintiff was made aware of this at the mornings

medication call. He was told that his Prescription had been discontinued

and would have to go to sick call later to see about getting it back. The

Plaintiff went to sick call later in the morning. He was seen by Defendant

Anthony Anderson EMT-P. Plaintiff explained to Defendant of his injury and that

he had been scheduled to be seen by a thoracic surgeon at FCI Phoenix before

he was transfered, He was looking to make certain that the procedure would follow

him and that He'd be able to still get the procedure completed while at Sheridan.

Plaintiff expressed the amount of pain he was in and would like to see the

specialist that he was told he'd see. In the Clinical Encounter with Defendant

Anderson, he documents as follows:

          SUBJECTIVE: Inmate states that he was seen at his previos
          institution and was supposed to see a specialist/surgeon for
          a possibly cracked/fractured sternum.

          PAIN SCALE: 7

          ASSESSMENT: Inmate had previous rib cage injury at another
          institution and was asking about treatment for his incorrect

CONTINUATION OF FACTS FROM PAGE 10...

> healing. Upon examination the rib cage on the left, has some
> inconsistency with bone alignment and healing. Inmate is able
> to take a deep breath but without some facial grimace. Inmate
> states that he is able to run and work out but he has pain
> while doing so. States that the pain does increase before and
> after workout.

The Plaintiff was sent back to his unit and nothing further was done. Defendant
Anderson did not prescribe anything for pain or order any further follow ups.

On October 17, 2018, after Plaintiff never received a response to his
BP-10 Appeal of the Wardens response, he filed his BP-11 in accordance of the
Federal Bureau of Prisons Policy and Program Statement regarding response times
and to consider non-response as a denial. The due date for the response of
his BP-10 was August 23, 2018. Even if the Federal Bureau of Prisons had
followed their own policy regarding the allowed amount of time for responses
and even the additional time allowed by an extension of time, the Region Director,
Mary Mitchell failed to comply by those requirements as set forth by the policy
and program statement. Her response was beyond the amount of time permitted.
Her response was dated for September 24, 2018. Two days late. Two days is two
days when  the Plaintiff must follow the very same rules or risk his complaint
being completely denied. Plaintiff feels that the Federal Bureau of Prisons
has also violated the guidelines as set by the Prison Litigation Refom Act.

On October 22, 2018, Plaintiff went to sick call and was seen by Defendant
Bergman. Plaintiff explained to Defendant a second time, his injuries. Plaintiff
also requested to be seen by the Doctor as he is the one who discontinued the
same medication that Defendant Bergman had ordered upon arrival. Defendant
Bergman refered the Plaintiff to be seen by the Doctor Andrew Grasley MD/CD.
Plaintiff returned to his unit.

CONTINUATION OF FACTS FROM PAGE 10...

October 23, 2018, Plaintiff finally received his response from the
Regional Director (BP-10), Defendant Mary M. Mitchell. This the response
that was due Aug. 23, 2018 or by Sept. 21, 2018 by way of a thirty (30) day
extension, which the Regional Director did not have. If by chance there
had been one unknown to the Plaintiff, the Defendant Mary M. Mitchell
still failed in her obligation to respond in a timely manner.

In the response, Defendant Mary M. Mitchell refused to acknowledge
the issue at hand. Inher response she all but admits that, "when an inmate
is transfered, any non-emergent procedures approved at other facilities
or institutions must be reviewed and approved at the new facility as the
new treating physician (whether a Bureau physician or a specialist) must
evaluate and concur with the course of treatment." This would or could
explain why the Plaintiff has been transfered so frequently. It is no secret
and well known that this is a routine tactic preformed by the Bureau of
Prisons. It has come out in other cases. More than once.

October 23, 2018, Plaintiff also receives at the very same time of
his BP-10 response, his rejected BP-11 from the Central Office. It was
accompanied with a rejection notice stating:

> REJECTION REASON 1: You did not provide a copy of your Regional
> Office Administrative remedy appeal (BP-10) form or a copy of
> the (BP-10) response from the Regional Director.
>
> REJECTION REASON 2: You may resubmit your appeal in proper
> form within 15 days of the date of this rejection notice.

Two very important facts surrounding this whole process and deliberate
indifference to a serious medical need is the delays in medical treatment
caused by the Bureau of Prisons medical staff and on up to the higher echelons
of the administration. The Bureau has attempted to dissuade the Plaintiff
from continuing his remedy process by, (1) Flagrantly rejecting his

CONTINUATION OF FACTS FROM PAGE 10...

appeal to the Central Office when he clearly stated in the first sentence
that he had not received a response. So the Central Office rejects his
appeal. Stating that he must attach a copy of the response that so convienently
was returned the same day as the rejection notice, (2) the rejection notice
stated that the Plaintiff could resubmit his appeal within 15 days of the
date on the notice. Big problem is that the notice was dated November 2,
2018. It was received in the wardens office at FCI Sheridan on November 14,
2018. Just days before the 15 days was to expire.

On November 2, 2018, Clinical Encounter- Administrative Note; Dr.
Grasley entered a note.  This is only information that was added by the Defendant
without the Plaintiff present.

> ADMINISTRATIVE NOTE 1: Discontinuing consult from previous
> facility, will f/u in CCC soon.
>
> DISCONTINUED CONSULTATION REQUESTS:  Consult/ Procedure;
> Cardiothoracic Surgery. Priority; routine.
>
> REASON FOR REQUEST: Thoracic Surgery to determine if any corrective
> procedure such as rib resection is appropriate for a costochondral
> separation at the 10 left rib present since 09/29/16. Send copy
> of chest CT dated 06/15/18.

With all that Plaintiff had gone through to finally be seen by a specialist
and the doctor to just simply cancel the consult after there was finally some
progress in treatment, shows Doctor Grasley's deliberate indiference to
the Plaintiff's serious medical need. There is absolutely no plausible reason
or excusse to cancel a visit to a specialist for potential corrective surgery.

On or about November 5, 2018, Plaintiff sees a familiar face of Defendant,
Ms. Leen in the housing unit that the Plaintiff was assigned to (2A) at
FCI Sheridan. Plaintiff respectfully approached her and inquired what was
going on with his appointment to see a specialist or to even see the doctor

CONTINUATION OF FACTS FROM PAGE 10...

due to the Bureau of Prisons Medical staff failing to provide the Plaintiff
with an opportunity to see the facility doctor from his arrival at the
institution back in September 2018. Defendant Leens  response was for
the Plaintiff to wait, that they were doing all that they could with only
having one doctor in the facility. When the Plaintiff called Ms. Leen out
on the rediculous excuse she was making for their deliberate actions of
indiference, she told him that he'd better change his attitude otherwise
she'd send him to the SHU. Plaintiff replied with, "for what? Asking to
be treated by medical? Plaintiff then turned and walked away.

    A few moments later, Plaintiff went to his unit counselor, B. Cray's
office and asked for a BP-8. Defendant Cray asked PLaintiff why he wanted
a BP-8? Plaintiff had again explained his medical condition and what he'd
been having to deal with for the past several months. Defendant Cray refused
to give the Plaintiff the requested BP-8 (informal resolution form), the
form that an inmate must complete before even being allowed to advance a
complaint to the wardens office. No BP-8 equals no BP-9 and not being able
to comply with the P.L.R.A.. This is not the first time that an inmate has
been denied access to the administrative process by this Defendant either
by outright refusal to give the BP-8 to an inmate or even using threats
as a means to discourage an inmate to utilize the proper channels of seeking
remedy. Plaintiff was a bit timid and fearfull that Defendant Cray would follow
through on his threat of sending him to the SHU if he filed a grievence.
The Plaintiff was uncertain as to what the Defendant would alledge, but
also knew that if he did get taken to the SHU that completing his administrative
process, and his Biven's claim would all but be lost.

    It does not take a rocket scientist to visually see that the Plaintiff

CONTINUATION OF FACTS FROM PAGE 10...

does in fact have a disfigured lower left rib cage. To be able to see with your own eyes and be able to clearly conduct a visual inspection of the deformity, a normal person without medical training can see that something is wrong with the Plaintiff. Someone somewhere should have been enough of a proffesional to take action into their own hands and treat the Plaintiff's injuries. The mere fact that this injury did happen, Plaintiff suffered physical damages, and even endured psychological problems and mental health issues. Plaintiff claims that medical has and continues to act in a deliberate and indifferent manner to his serious need for medical attention. Plaintiff feels that his encounters with the Bureau of Prisons were by far operating below the standard of practice. Had Plaintiff been on a job and the injury happened, he would have been able to get the proper and timely medical treatment. Plaintiff has shown very clearly that most Defendants have had at some point the knowledge of the Plaintiffs medical issues. Most Defendants had some form of communication with the Plaintiff in regards to his injury all while not providing adequate or proper treatment which in this day an age constitutes a derelict of duties that has resulted in the Plaintiff having physical deformities and every day pain with limited enjoyment of his normal every day activities. The deliberate indifference has caused a great deal of stress, pain, and even a body deformity.

Since trying to utilize the Administrative Remedy process as required by the P.L.R.A., the Plaintiff feels that Bureau of Prison staff are retaliating against him within the loopholes of the policy and program statements. The Plaintiff has sent out several letters to see legal representation for this potential Bivens Case against the Bureau of Prisons and most of the letters were returned in some deformed manner consistant with being tampered with in an attempt to discourage the Plaintiff. Some returned letters were so

CONTINUATION OF FACTS FROM PAGE 10...

badly damaged that stamps were missing, tire tracks, address was even near

shredded off the front, and looked as it it had been ground into the ground.

Plaintiff went to speak to Lt. McDonald at mainline about his letters

being so badly damaged. She immediately turned aggressive and blamed the

United States Postal Service for the damages. She also stated, "get out of

here dude." among other things. Plaintiff felt it was in his best interest

to heed her advice and left to help defuse the potentially negative outcome.

The Plaintiff has made an over abundance of effort to seek through the proper

channels, adequate medical attention. All to no avail.

December 4, 2018, Defendant Grasley had scheduled him by the institutonal

call-out for a follow up from sick call. Defendant Grasley's Clinical Encounter

states the following:

> COMPLAINT 1, CHIEF COMPLAINT: Orthopedic/Rheumatology
>
> SUBJECTIVE: Patient fell onto the Left chest wall at his previous
> facility in 2016. The fall occurred when he slipped getting onto
> his bunk and landed on the edge of the lower bunk. Since then with
> pain and a palpable deformity in the lower left chest wall. The
> pain bothers him when he is moving the torso and when he is lying
> down. Notes that the pain is quite bothersome. No radiation of the
> pain. CT scan showed evidence of prior separation of the left 10th
> rib costochondral junction
>
> PAIN SCALE: 8
>
> EXAM COMMENTS: Left chest wall with palpable deformity along the
> lower margin of the ribs anteriorly.
>
> ASSESSMENT: Fracture one rib, S2239XS - current
>
> PLAN: Ordered new medication of OXcarbazepine Tablet 300mg orally
> two times a day x 180 day(s)
>
> NEW CONSULTATION REQUESTS: Orthopedist
>
> SUBTYPE: Offsite non-surgical Appt, NOS
>
> REASON FOR REQUEST: See "SUBJECTIVE" notes.
>
> OTHER: Will start oxcarbazepine for pain control.

Plaintiff wonders why Defendant Grasley went through the trouble to discontinue

the prior treatment that was recommended at his previous facility to turn around

Page 32

CONTINUATION OF FACTS FROM PAGE10...

just after two and a half months to change his mind about an orthopedist with
a target date of 03/04/2019. The medication that Defendant prescribed have
not worked well for the pain. Somehow the Defendant has his wires crossed
with the Plaintiff seeing an ortho insted of a thoracic surgeon. Orthopedist
would never be able to deal with this issue. That is what a thoracic surgeon
is for. Plaintiff isn't sure of why that was even approved. Why did Defendant
Grasley undue all the work that the Plaintiff had accomplished, to recommend
an unnecessary treatment?

December 14, 2018, Plaintiff received a response to the second BP-11
that he had mailed due to the previous BP-11 being rejected. As with the other
responses, the Bureau of Prisons refuses to answer even one question that has
been presented to them. Ian Conners, Administrator NAtional Inmate Appeals,
has refused to read and conduct his own separate investigation into the Plaintiffs
complaints. The PLaintiff has supplied Defendant Conners with sufficient
documentary evidence in support of his deliberate indifference case. Mr. Conners
has continued this indifference with his response of denial. Plaintiff has now
even begged for the proper medical attention to the highest level in the
bureaucratic chains of command. Defendant Conners has decided to ignore the
pleas from the Plaintiff for help. Defendant Conners is and was aware as well
as had knowledge of Plaintiff's issues and chose to do nothing instead of
upholding his oath and duties. It has become very clear that ALL of the Defendants
in this complaint had two main thing in common. Knowledge! They were all made
perfectly aware of the issue that the Plaintiff was having. Second, they all
chose to treat and disregard the Plaintiff with deliberate indifference to
his serious medical need.

December 17, 2018, Plaintiff went into medical to ask what was happening
with his Dr.'s appointment? Plaintiff had been talking to Defendant Marcie

CONTINUATION OF FACTS FROM PAGE 10...

Morgan, (HIT) when Defendant Ms. Leen came storming around the corner yelling
at Plaintiff, "you will not harrass my staff and you need to leave." Defendant
Mrs. Morgan gave Plaintiff a copy of the order and he left. A consultation
request was submitted on 12/04/18 for an off site non-surgical appt, NOS was
approved on 12/12/18.

December 28, 2018, Plaintiff sent a cop-out to medical seeking a copy
of his medical records so he could begin obtaining the documentation he felt
would be of value to his filing the Bivens claim. In his request the Plaintiff
had stated:

> "Please provide me with a complete copy of my medical records
> beginning on 4-1-16 and ending on 12-28-18. This includes but
> not limited to all corrispondence and replies, any and all
> notes or dispositions, medical findings, medical grievences
> Etc..... (EVERYTHING). No response.

On January 9, 2019, Plaintiff was taken to McMinville Hospital to see
Dr. Mark Thomas MD., who is an orthopedic surgeon. This Dr. specializes in
just about all broken bones or tendons. He does not deal with the ribs or
sternum. His notes in ROS seem to be a generic response that was copied and
pasted. It's inaccuracies include:

> "He reports no chest pain, and no sleep disruptions."
> PRIOR IMAGING: x-ray; CT scan; x-rays done at FCI, CT done
> AZ. we do not have any of the imaging.
> PHYSICAL EXAM: Shows no swelling and no pain with rib compression.
> No tenderness over sternum.
> Both of these statements are false.

Plaintiff expresses that there is a bump sticking out of his chest. Also stresses
that pressure is the biggest cause of pain. Part of the dr.'s recommendations
stated:

> "I think if this is something he feels is intollerable, he
> probably has to see a thoracic surgeon to see if there is
> anything that they would have to offer."

CONTINUATION OF FACTS FROM PAGE 10...

Once again Dr. Grasley knowingly canceled the appointment of the specialist that would have been able to do anything positive for the Plaintiffs issue. The appointment that Defendant Grasley sent the Plaintiff to was unnecessary and a waste of money. As a "profesional in the medical field, Grasley should have known the difference between an orthopedic surgeon and a thoracic surgeon. Upon returning to the institution, Plaintiff spoke with Captain Galberth, who had escorted Plaintiff on med trip, about helping him to get his medical records since an "open house" at medical took place while Plaintiff was out of the institution. Captain Galberth had agreed to assist the Plaintiff in obtaining his medical records.

on January 14, 2019, during mail call, Plaintiff received the cop-out to medical dated 12/28/19.  The response was dated 01/03/19, by Defendant Morgan stating:

        "Come to the next open house."

underneath Mrs. Morgans signature was another note written by Ms. Leen and dated 01/11/19, stating:

        " Spoke to Captin - inmate was out on bus med trip. Needs
        records for upcoming court."

Plaintiff took request to mainline where he approached Defendant Leen and asked what was going on with getting his records, because he had been told that it would be taken care of. Defendant Leen told Plaintiff that if was not an open house within a week she would get them. Three weeks later Plaintiff again approached Defendant Leen at mainline with a third request. Plaintiff explained that there had not been any open houses and would like his medical records. Defendant Leen's response was that she would check and if there had not been an open house she would get it herself. Plaintiff gave her the request and thanked her. The following Monday, February 5, 2019,

CONTINUATION OF FACTS FROM PAGE 10...

Plaintiff received the request back with the same response:

> "Please come to the next Medical Records Open House. The
> date and time to arrive will be announced on Trulincs via
> email."

Plaintiff received this response and within an hour Ms. Leen came into
the unit to do inspection. Plaintiff approached her about the response.
Defendant became hostile toward the Plaintiff, claiming there had been
two prior open houses and would not assist him. Plaintiff stated that
he would show her on the computer's institution bulletin board. She
had stated that her staff had told her that there had been open house
on two prior occassions and refused to look at the proof (cop-out) in
front of her.

The next day I went to mainline, saw the Captain and spoke to him
in regards to the situation. He then called Defendant Leen over and
before either the Captain or I could say anything to her, she became
extremely aggitaded and told the Captain, "Don't worry about it I have
S.I.S. on him already. The Captain then told the Plaintiff not to worry
that he'd take care of it.

The Plaintiff filed a BP-10, directly to Region out of fear of
retaliation by Defendant Ms. Leen for her statement to the Captain. The
Plaintiff in his BP-10 stated that her willingness to twist situations,
her use of other staff to manipulate medical records and to create
potentially harmfull situations is very concerning. This shows that she
is willing to go to great lengths to cover up her negligence in duty
and indifference in medical care.

February 27th at 7:00a.m. was the first open house for medical in
two months. Plaintiff was called by Mrs. Morgan and asked about any
follow up on the appointment that Plaintiff had attended. Mrs. Morgan had

CONTINUATION OF FACTS FROM PAGE 10...

told him that, "the Dr. had recomended a referal to another Dr. (thoracic)
if you felt that it was unbearable but that they had not done so and you
will have to go to sick-call to get an appointment with the doctor have
him do a referal in order for an appointment to be made for a thoracic surgeon."
She gave the Plaintiff a copy of that recomendation and complete copy of
requested medical records. Plaintiff left medical.

On or about March 1, 2019, Plaintiff went to sick-call. Spoke to a male
paramedic, name unknown. Explained to him that he was told the day before by
Defendant Morgan to come in. She told him to go to sick-call to see him to
have him make an appointment to see the doctor. Plaintiff had explained that
he was approved to see a thoracic surgeon in early 2018 while at Phoenix.
Sheridan sent me to anorthopedic surgeon on 1/14/19. The surgeon stated that
he was unable to do anything for him but did recomend he see a thoracic surgeon.
Plaintiff came to sick-call so that he could get an appointment with the
doctor so that the doctor could submitt paperwork for approval to see the
thoracic surgeon which should have been done upon return from the Orthopedic
surgeon. The paramedic called in a "Mrs. O" in and explained the situation.
She stated that he must wait for it to be reviewed and approved. Expressed
that it was approved in 2018 and shouldn't be too difficult to gain approval
again. Plaintiff was told to give it a week or two and hit Ms. Leen up at
mainline. Plaintiff informed "Mrs. O" of the situation between himself and
Defendant Leen and that he felt uncomfortable doing so. She stated that she
would do what she could and was called away. The paramedic explained that
it was now on her and the doctor because, "they have a big bag of tricks
and he has a little tea cup." Plaintiff explained that the medication did
not work and only made him feel drunk and that he takes Ibuprofen maybe

CONTINUATION OF FACTS FROM PAGE 10...

once a week when pain wakes him up at night. The paramedic said that he would do what he could. That was the end of the visit.


Plaintiff reserves his right to amend this complaint to either the Courts orders of if the Plaintiff becomes aware of or remembers any further information.

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

First and foremost the Plaintiff requests that he been seen, assessed, and treated by thoracic surgeon. He believes that he is entitled to corrective surgery to be preformed immediately. Until corrective surgery can be scheduled and completed, the Plaintiff seeks some type of adequate pain management solution. Plaintiff would like to see each employee who has been neglegent in their duties and responsibilities to protecting and providing adequate health care to inmates, be repremanded, suspended, or some other form of consequences as a deterent to further deny any inmate in the care and custody the proper medical attention that is needed. The Plaintiff  seeks damages for the physical deformity that the Plaintiff has had to suffer with, unduley for such a long time. Plaintiff also seeks compensary repayment for the money he has had to come out of pocket with for each sick-call appointment, medications he's had to purchase over the counter through the institutions comissary. Plaintiff seeks monetary restitution for the wanton affliction of pain that the Defendants made the Plaintiff suffer through even after being made aware of Plaintiffs serious need for medical attention. Plaintiff seeks monetary compensation for the mental anguish that he has suffered over the course of several months and since the date of original accident caused by the pain, agony, and poor nights sleeping while in pain. He seeks compensation for the lack of the ability to have and enjoy a normal daily activities since the date of the original accident. The Plaintiff seeks a total of $25,000,000.00 dollars to be dispersed how the Honorable Court sees fit. The Plaintiff also seeks an additional $1,000,000.00 to go the non-profit organization of his choice, and one that deals with prison litigations of civil rights.

4-8-2019
*(Date)*

*(Signature of Plaintiff)*

PHX 1330.16c
August 13, 2013
Page 4

Attachment A: Informal Resolution

## Attachment A

### INFORMAL RESOLUTION
### FCI Phoenix
### Phoenix, AZ 85086

An inmate with a complaint should complete the first three sections below and submit the form to his/her respective Correctional Counselor.

1. _Michael Montgomery_    _21005-081_    _Pima A_
   Inmate Name            Reg. No.         Unit

2. Nature of complaint (briefly state your problem): I have been trying to get medical attention for my sternum since Aug 2016. I am in severe pain and currently have an unknown object sticking out of my chest. I have been very clear in all correspondence but have been neglected and in most cases completely ignored. This is and always has been a serious matter and get to have proper medical attention. Please explain why.

3. Inmate's efforts to resolve problem (includes contact with staff, Inmate Requests to Staff Member submissions, etc.):

22 months worth of requests, sick call slips, Kytes and complaints to any and all who will listed a 1 1/2 inches of medical files and nothing done

4. Advice to inmate regarding complaint (include Program Statement number if applicable):

See Attached Response

5. Informal Resolution WAS/WAS NOT accomplished (Circle One).

_____          _____
Correctional Counselor               Unit Manager

_5-24-18_
Date

**MONTGOMERY, MICHAEL**
**Reg. No.  21005-081**
**PIMA A.**

---

### Inmate Informal Resolution Response

This is in response to your Informal Resolution, wherein your chief complaint is about medical care.


Your CT scan is scheduled and confirmed. Please wait for the assigned date.


Date ___5-24-18___

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Montgomery Michael C      21005-081      Pima A      FCI Phoenix
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A– INMATE REQUEST ① Explain why it has taken 22 months to get an appointment or a CT scan? ② Explain why this matter has not been taken seriously and not been examined by a Doctor? ③ Explain why an inmate with a pain scale of 10 has been told to order IBU off of commisary when its commen knowlage, that its not for continued daily use? ④ Explain why medical has falsified medical records claiming a different level of pain? ⑤ Explain why each PA has refused to allow me to see a Doctor claiming nothings wrong? ⑥ Express accountability for 22 months of medical neglect? ⑦ Explain why after 22 months there are somehow no records of correspondance? ⑧ Explain why common practice is to stall every matter in hopes that complaints will eventuall tire and go away?

6-5-18
DATE

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JUN - 6 2018
BY:

_____          _____
DATE                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

                                                      CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____          _____
DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

Montgomery, Michael C          Reg. No. 21005-081          Remedy # 942835- F1

This is in response to your Request for Administrative Remedy received on June 6, 2018, in which you state improper and inadequate medical care.

A review of your medical record shows you are receiving appropriate medical care at FCI Phoenix. A physician at FCC Victorville evaluated you on November 7, 2017. The physical exam demonstrates a well-developed well-nourished male in no apparent distress. The chest is clear to auscultation and the cardiac exam demonstrates a regular rate and rhythm without rubs, gallops, or murmurs. There is a protuberance along the costal margin inferiorly overlying the costochondral junction laterally. This is not showing compression tenderness of the chest wall and/or rib cage, it is callus, smooth, and nontender. X-rays of the area revealed no evidence of a fracture. You arrived at FCI Phoenix on December 27, 2018, during your medical intake screening you were notified how to obtain medical and dental treatment. However, you did not mention your rib cage pain until your sick call visit on January 6, 2018.   You returned to sick call on January 29, 2018, complaining your sternum was broken and in pain, you reported your pain level as an eight. The nurse evaluated you and recorded your blood pressure as 139/85, pulse 50, oxygen saturation 97%, and respirations at 15. A physical exam of the left lower rib cage identified a small palpable and visible non-friable mass/lump, tender to palpation, with no ecchymosis, warmth, and/or erythema was noted. The nurse completed a chart review and discovered the x-ray report completed on November 3, 2017. It showed costochondral junction irregularity with soft tissue swelling over the 8th and 9th ribs. There is no radiographic evidence of an acute fracture. Since January 29, 2018, you have utilized sick call multiple times regarding your costochondral junction pain, hence the URC committee approved a CT scan on April 3, 2018, and it was completed on June 15, 2018. On June 19, 2018, medical received the results of the CT scan, which revealed an old fracture of the left 10th rib or possibly a floater and no other findings. On June 27, 2018, the Clinical Director examined you and noted a palpable nodularity at the costochondral junction separation or old fracture site. The Clinical Director submitted you for a Thoracic Surgical consult to determine if any corrective procedure could be recommended.

Your medical records suggest you are receiving appropriate and timely medical care and treatment in accordance with Program Statement 6031.04, Patient Care. Should you have other concerns or your condition worsens, I encourage you to seek medical care through sick call. The Health Services staff are required to practice under strict guidelines of the BOP Central Office, National Health Policies, and related policies and procedures when determining medical treatment strategies.

Accordingly, this response is for informational purposes only.

If dissatisfied with this response, you may appeal to the Regional Director, Western Regional Office, 7338 Shoreline Dr., Stockton, CA 95219.   Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

William W. Lothrop, Warden                    Date

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Montgomery, Michael, C.   21005-081   Pima A   FCI Phoenix
_____LAST NAME, FIRST, MIDDLE INITIAL_____REG. NO._____UNIT_____INSTITUTION

Part A - REASON FOR APPEAL ∅ of the issues raised in the Administrative Remedy
are been addressed, in this response. The first sentence is incorrect
cause my pain has not been addressed beyond a suggestion to take
BM. I have had to go to sick call several times and all but
nd to force my way into getting medical to call and make an
ppointment for my CT scan. How is it that if medical are in accorda
ith program statement 6031.04, that it took 22 months to
entify the wound and now refer to it as an old fracture site
his is a clear case of medical neglect and malpractice. It is an
vious attemp to throw a bunch of nonsense on paper and refuse
look at or answer the issue. It is descusting and down right
nel to treat humans the way medical staff does and should
e addressed
_____7-18-2018_____                                        _____
        DATE                                                    SIGNATURE OF REQUESTER

Part B - RESPONSE

JUL 2 4 2018

_____                    _____
        DATE                                        REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar
days of the date of this response.
ORIGINAL: RETURN TO INMATE                       CASE NUMBER: 942835-R

Part C - RECEIPT

                                                 CASE NUMBER: _____

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.            UNIT            INSTITUTION
SUBJECT: _____

_____                    _____
        DATE                                 SIGNATURE, RECIPIENT OF REGIONAL APPEAL

942835-R1
FCI Phoenix

This is in response to your Administrative Remedy Appeal of the Warden's decision dated
July 16, 2018. You allege medical neglect and malpractice and claim the issues raised were not
addressed in the response signed by the Warden. You want to know why it took 22 months to
schedule a CT scan if the care provided was in accordance with Program Statement 6031.04.
You do not request specific relief.

Your appeal has been investigated. A thorough review of your medical record was performed
and confirmed the information provided within the Warden's response. Your medical concerns
have been addressed through Intake Screenings, History & Physical, Mid-Level Provider, Injury
Assessment, Sick Call, Diagnostic, and Dental Encounters. On August 29, 2016, at FCC
Victorville, an Injury Assessment – Non-work related encounter was performed for complaints
of left side flank pain. You claimed you hit your ribs when climbing onto your bunk. The
examination revealed no skin deformity, no swelling, no edema, no hematoma, no laceration, no
abrasion, and no puncture wound. You were noted with minor deformity/crepitus around the
eighth intercostal space (ICS) on inspiration and expiration. You were provided Ibuprofen, an x-
ray was ordered, and released to your housing unit with instructions to watch the call out for a
scheduled sick call appointment. You were also advised to notify medical staff if the condition
changed or worsened prior to the scheduled appointment. On August 30, 2016, you were
evaluated again for chest pain and difficulty breathing. You reported you were jumping onto
your bunk, missed, and cracked your chest. A chest x-ray was taken with unremarkable findings
to include no rib fractures. You were provided an abdominal binder and a 30-day supply of 600
mg Ibuprofen twice daily for pain. Although, you were seen intermittently for other unrelated
complaints, the next clinical encounter related to your injury was on November 7, 2017. During
the November 7, 2017 visit, you reported your rib "pokes out" and you must place a pillow under
the rib to prevent it from hurting when you lay on your stomach. A routine CT Scan was
recommended to determine if there was any separation of the costochondral junction of the 10th
rib on the left side as an enlarging mass has developed in the area. On December 27, 2017, you
were transferred to FCI Phoenix prior to completion of the CT Scan. When an inmate is
transferred, any non-emergent procedures approved at other facilities or institutions must be
reviewed and approved at the new facility as the new treating physician (whether a Bureau
physician or outside specialist) must evaluate and concur with the course of treatment. On
January 29, 2018, you were seen during a Sick Call Encounter for a "broken sternum" and
continued rib pain. The examination revealed a small palpable and visible non-friable
mass/lump, tender to palpation with no ecchymosis, no warmth, and no erythema noted. You
were provided Naproxen for pain and the pending consultation for a CT scan was reviewed. On
June 15, 2018, the CT Scan was performed and revealed a left rib 10 coaster chondral junction
separation or old fracture; otherwise normal. You have been recommended for a Cardiothoracic
Consultation to determine if a corrective procedure may be appropriate. The Utilization Review
Committee approved the consultation on August 1, 2018. You will not be advised in advance of
the exact date or time of the appointment due to security concerns. You should continue to
monitor the call out list to ensure you do not miss a scheduled appointment.

942835-R1
FCI Phoenix
Page 2 of 2


Based on the above, you are receiving care and treatment for requested medical concerns in accordance with Bureau of Prisons Clinical Guidelines.   There is no evidence of medical malpractice or neglect.  If you experience an increase in pain or symptoms, you should submit a Sick Call request following local procedures for evaluation.

 Accordingly, this response is for informational purposes only.  If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534.  Your appeal must be received in the General Counsel's office within 30 calendar days of the date of this response.

9-24-18
Date

Mary M. Mitchell, Regional Director

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 2, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MICHAEL CHASE MONTGOMERY, 21005-081
      SHERIDAN FCI    UNT: UNIT 2    QTR: B03-230U
      P.O. BOX 8000
      SHERIDAN,  OR 97378


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 942835-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 24, 2018
SUBJECT 1        : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2        : MEDICAL CARE - IMPROPER OR INADEQUATE
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   REGIONAL OFFICE
                 ADMINISTRATIVE REMEDY APPEAL (BP-10) FORM OR   A COPY
                 OF THE (BP-10) RESPONSE FROM THE REGIONAL DIRECTOR.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.



RECEIVED

NOV 1 4 2018

Warden's Office
FCI SHERIDAN

**U.S. Department of Justice**

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Montgomery, Michael, C      21005-081      2-A      FCI SHERIDAN
LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

**Part A—REASON FOR APPEAL** I never received a response from my BP-10 I gave it almost 2 months after the Due date of Aug 23 2018. I have yet to have any of my Questions answered. I have yet to get the medical attention needed. I have been transferred both times Ive come close to seeing a specialest Ive gone to medical here twice and told both times I would see a doctor within a week. I am in extreme pain and need medical attention. Please read through all my medical records and paperwork provided. I need Help- thanks

10-17-18
DATE                           SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

OCT 24 2018

Administrative Remedy Section
Federal Bureau of Prisons

DATE                           GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE       CASE NUMBER: 942835A1

**Part C—RECEIPT**                CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL        BP-231(13)
USP LVN                                                          Previously BP-DIR-11

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Montgomery, Michael C.    21005-081    Pima A    FCI Phoenix
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** Ø of the issues raised in the Administrative Remedy have been addressed, in this response. The first sentence is incorrect because my pain has not been addressed beyond a suggestion to take IBU. I have had to go to sick call several times and all but had to force my way into getting medical to call and make an appointment for my ct scan. How is it that if medical are in accordance with program statement 6031.04, that it took 22 months to identify the wound and now refer to it as an old fracture site. This is a clear case of medical neglect and malpractice. It is an obvious attempt to throw a bunch of nonsense on paper and refuse to look at or answer the issue. It is disgusting and down right cruel to treat humans the way medical staff does and should be addressed

7-18-2018
DATE                                     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                               REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE           CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**               CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE                         SIGNATURE, RECIPIENT OF REGIONAL APPEAL

                                          BP-230(13)
UPN1VN                                          JUNE 2002

RECEIPT - ADMINISTRATIVE REMEDY


DATE: NOVEMBER 27, 2018



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MICHAEL CHASE MONTGOMERY, 21005-081
      SHERIDAN FCI    UNT: UNIT 2    QTR: B03-230U



THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 942835-A2
DATE RECEIVED   : NOVEMBER 7, 2018
RESPONSE DUE    : JANUARY 6, 2019
SUBJECT 1       : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2       : MEDICAL CARE - IMPROPER OR INADEQUATE

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: NOVEMBER 27, 2018


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MICHAEL CHASE MONTGOMERY, 21005-081
      SHERIDAN FCI    UNT: UNIT 2    QTR: B03-230U


ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID      : 942835-A2
DATE RECEIVED  : NOVEMBER 7, 2018
RESPONSE DUE   : JANUARY 6, 2019
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      : MEDICAL CARE - IMPROPER OR INADEQUATE

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Montgomery Michael C          21005-081          2A          FCI Sheridan
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** Not only was the response 60 days late but once again ∅ issues were addressed or resolved. I have been transferred twice before seeing a doctor. Now in Sheridan I am informed by medical staff there is one doctor and he is busy at the camp and can't see me. I am in Severe pain my sternum healed wrong and sticks out of chest. Why if proper medical care was provided did it take 22 months to find issue? I went to sick call many times and was told nothing's wrong. Thats not proper medical care. IBU and naproxin are a joke considering the pain and are a sac attemp to show concern. Still ∅ of these issues have been addressed once again due to transfer I am back at square one. please let me see a doctor and get help. I am begging.

10-23-18
_____          _____
DATE                     SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

NOV 0 7 2018

Administrative Remedy Section
Federal Bureau of Prisons

_____          _____
DATE                     GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 942835-A1 A2

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____          _____
DATE                     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN          Previously BP-DIR-11          BP-231(13)
                                               APRIL 1982

Administrative Remedy No. 942835-A2
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal wherein you assert you have severe pain in your sternum
that healed wrong and sticks out of your chest.  For relief, you
request to see a doctor and get help.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal.  Our succeeding review reveals on December 4, 2018, you
were seen by a doctor who went over your CT results, prescribed
you oxcarbazepine for pain and requested an Orthopedist
consultation.  This consultation is pending review from the
Utilization Review Committee (URC).  Once the consultation has
been reviewed, Health Services will notify you of their
decision.  It is in your best interest to continue compliance
with your medication regimen and medical plan of care in order
to obtain optimal results.  Your primary care team will continue
to make recommendations as needed.  As recommendations are made,
a course of treatment will be determined.  Given this, we shall
defer diagnostic testing and treatment interventions to the
Health Services staff at the local level.

The record reflects you have received medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons.  You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your condition change.

Considering the foregoing, this response is provided for
informational purposes only.


_____                    _____
Date                                   Ian Connors, Administrator
                                       National Inmate Appeals